UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00411-MOC

| | |
|---|---|
| **DAVID ANTONIO MONTERO-GARCIA,** )<br> )<br>Petitioner, )<br> )<br>Vs. )<br> )<br>**KATHRYN LEE MCMILLAN MONTERO,** )<br> )<br>Respondent. ) | **ORDER** |

**THIS MATTER** is before the court on petitioner's Motion for Reconsideration of Court's Denial of Fees and Costs (#26).

**FINDINGS and CONCLUSIONS**

I. **Procedural History**

Petitioner filed his Verified Petition for Warrant to Take Physical Custody of Children and Alternative Motion for Temporary Restraining Order (hereinafter "Petition") (#3) on July 18, 2013. After expedited ex parte consideration of the Petition, the court granted in part and denied in part the requests for immediate relief on July 19, 2013. Order (#5). In pertinent part, the court held, as follows:

> from the allegations of the petition, it appears that petitioner and respondent voluntarily left the Dominican Republic and travelled to the United States with the children. While petitioner has plausibly alleged that the children have been wrongfully retained, the court cannot find that they were wrongfully removed from the Dominican Republic. Furthermore, the court finds that petitioner likely does not have sufficient means to adequately support the children in this district pending hearing of this matter as he has alleged that, due to financial difficulties, he is staying with friends outside the district. The court will decline to issue the warrant.

1

Order (#5) at 2. While declining to issue a warrant, the court granted the petitioner's alternative request for relief and issued a Temporary Restraining Order, prohibiting respondent from removing the children from this district. Id. at 3. A trial/evidentiary hearing on the Petition was calendared for July 23, 2013, at which respondent appeared and requested additional time to secure counsel and prepare. The hearing was reset for August 7, 2013, at which all parties appeared, testified, and were represented by counsel.

After trial concluded, the court issued its Order (#23) finding that the children had been wrongfully retained and directed that the children be returned to their habitual place of residence. Finding that it was appropriate for the children to remain with the respondent until the flight home and that both parents should accompany the children on the flight, the court directed petitioner to purchase tickets for the children as well as the respondent for the return flight to the Dominican Republic. In so finding, the court determined based on the undisputed financial information submitted at trial that

> petitioner is the sole financial provider for the family, that his income of some $2000 a month would place this family above the poverty line in the Dominican Republic, and, absent some other source of income, they would be living in poverty if they remained in the United States. Further, while it appears that the children have aunts in the United States willing to furnish housing, they have maternal grandparents in the Dominican Republic who have, based on past actions, the means to provide housing and some financial support when needed.

Order (#23) at 10-11. Such determination was based on respondent's unrefuted testimony that she was completely dependent on the support of petitioner, had to go on public assistance while in this jurisdiction, and that the family depended on some support from her parents before they came to the United States. Determining that it would be clearly inappropriate for respondent to bear the costs, expenses, and fees incurred in this action due to her complete dependence on

income from petitioner, the court denied petitioner's request that respondent pay his costs, expenses, and fees under 42 U.S.C. § 11607.

## II. Motion to Reconsider and Hearing

Petitioner filed his request for reconsideration of the costs and fees portion of the Order after respondent had returned to the Dominican Republic and obtained counsel to represent her in the domestic action in her home country. In moving to reconsider, petitioner asks that discovery be opened so that inquiry can be made into the source of payment of her attorneys in the domestic matter.

In support of petitioner's request for attorney's fees and costs, petitioner contends that this court erred in relying on respondent's uncontroverted trial testimony concerning her lack of income and being on public assistance. Respondent has filed a response to the Motion to Reconsider, objected to the legal basis for reconsideration, and challenged counsel's affidavit and the lack of submission of billing records. A hearing was conducted on November 6, 2013, at which counsel for the parties were present. Counsel for petitioner volunteered that he would submit detailed time records if requested by the court.

## III. Discussion

The court notes that petitioner did not file a motion for attorney's fees and costs and did not demand fees in his Petition. See Fed.R.Civ.P. 54(d); L.Cv.R. 7.1(C)(2). Instead, the request for fees was found, for the first time, in a post-trial Brief in Support of Hague Petition (#20). Such request provides as follows:

> (2) The Court order the submission of evidence regarding Petitioner's costs and fees and award reimbursement of the same pursuant to 42 U.S.C. § 11607(b)(3).

3

While petitioner clearly asked for an opportunity to submit "evidence regarding Petitioner's costs and fees," the evidence concerning respondent's ability to pay such costs and fees was already before the court. The Hague Convention provides that "[w]here a child has been wrongfully removed or retained ... the authority concerned shall order the return of the child forthwith." Hague Convention art. 12. As there was no evidence that respondent had any ability to pay any fees or costs, the court found no reason to ignore the mandate of the convention and delay the return of the children simply to allow petitioner to submit evidence of his fees and costs. Indeed, at petitioner's request and over respondent's objection the court calendared an expedited trial and ordered expedited post-trial briefing.

At the trial, counsel for respondent called respondent and asked a series of questions concerning respondent's financial situation. Such sworn testimony indicated to the court that respondent had absolutely no personal assets, all her income came from petitioner, and since being in the United States, she relied on public assistance as well as help from her church and sister to support her and her four children. It was apparent that respondent had no prospects for gainful employment outside the home. Petitioner cross-examined respondent, but her testimony concerning her financial situation was neither challenged nor impeached. As the court recalls the testimony, respondent testified that before coming to the United States, the family of six relied on petitioner's income, but that after petitioner lost his job with Verizon, the family's finances were so dire that the family depended on support from respondent's parents to pay certain bills, including health insurance premiums.

The court has fully credited petitioner's assertion that respondent now has the assistance of paid counsel in the Dominican Republic in the domestic action that ensued upon the family's return. There is, however, no evidence that she, rather than her parents, paid those attorneys.

4

Petitioner wishes to take discovery in this court to determine the source of such funds for counsel in the Dominican Republic. In light of petitioner's undisputed testimony, the fact that she now has the assistance of retained counsel in the Dominican Republic does not unsettle this court's conclusion that imposition of costs and fees is "clearly inappropriate" based on an inability to pay. As discussed at the hearing, the court notes that it is a very common practice for concerned relatives -- especially concerned grandparents -- to hire counsel to represent indigent parties in court, especially in domestic matters that could impact child custody and grandparental visiting rights.

The fact that respondent has counsel in the Dominican Republic is not, standing alone, sufficient cause for revisiting the earlier determination that respondent has no ability to pay. At this point, it is pure speculation that respondent has a source of funds that she did not reveal to this court. Petitioner has not submitted evidence (such as bank records, wage statements, or property records from the Dominican Republic) that would support a conclusion that respondent committed perjury before this court or has had a post-return windfall that would justify reopening the issue of attorney's fees. Indeed, if petitioner makes such a discovery within one year of this court's Order, he may return to the court with that newly discovered evidence under Rule 60(b)(2)-(3), Federal Rules of Civil Procedure. This court does not consider it appropriate to reopen this matter and conduct what would now be expensive, international, court-sanctioned discovery (which would also need to meet requirements of other aspects of the Hague Convention concerning international judicial assistance) based on petitioner's speculation as to the source of his wife's attorney's fees in the Dominican Republic. Respondent's at-trial testimony concerning her financial condition was clearly intended to provide the court with information with which to make the § 11607(b)(3) determination, as it was not helpful in proving

any of the defenses available under the International Child Abduction Remedies Act ("ICARA"). Petitioner was afforded an unfettered opportunity to examine respondent at trial, but in no way challenged her testimony concerning her finances.

Putting aside the concerns as to the source of payment of counsel in the Dominican Republic, the legal question posed at the hearing on the Motion to Reconsider was whether petitioner was entitled to his costs and fees regardless of the financial circumstances of respondent. Petitioner made arguments both under ICARA and under Rule 54(d). As will be discussed, petitioner's reliance on Rule 54(d) is misplaced.

First, an award of fees and costs in ICARA cases is governed by 42 U.S.C. § 11607(b), which provides as follows:

> **(b) Costs incurred in civil actions**
> (1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).
> (2) Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 11603 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.
> (3) Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b). Thus, § 11607(b)(1) provides that it is petitioner's responsibility to bear the costs in securing the return of wrongfully retained children as well as any accompanying persons. In turn, § 11607(b)(3) provides for shifting the burden of those fees, costs, and expenses to a person who wrongfully retains a child, except where such shifting would be "clearly inappropriate." While petitioner clearly proved that respondent had wrongfully retained

the children in this jurisdiction, the court found that shifting petitioner's fees and costs to respondent would be "clearly inappropriate" as respondent established at trial that she had no ability to pay and was completely indigent.

Generally, a court may reduce a fee award in a Hague Petition case if such an award would prevent a respondent-parent with a "straitened" financial condition from caring for his child. Rydder v. Rydder, 49 F.3d 369, 373–74 (8th Cir.1995); Whallon v. Lynn, 356 F.3d 138, 139–40 (1st Cir.2004); Norinder v. Fuentes, 657 F.3d 526, 536–37 (7th Cir.2011); Saldivar v. Rodela, 894 F.Supp.2d 916 (W.D.Tex. 2012). A reduction is equitable in nature, Rydder, 49 F.3d at 374, a court has "broad discretion" in making such an equitable reduction, Whallon, 356 F.3d at 140, and the inquiry is "whether respondent has clearly established that it is likely that her child[ren] will be significantly adversely affected by the court's award." Id. Closer to home, this court's colleague, Honorable Gina M. Groh, United States District Judge, Northern District of West Virginia, recently held in a Hague Convention matter that "it would be clearly inappropriate to grant an award of attorney[']s fees and costs as Petitioner has not presented adequate evidence to substantiate such a request and Respondents would be unable to pay any amount of an award." East Sussex Children Servs. v. Morris, 919 F.Supp.2d 721, 734 (N.D.W.Va. 2013)

While respondent has correctly noted deficiencies in petitioner's request for fees, the court has no doubt that such errors could be corrected. See infra at Sect.V. However, there is no evidence to suggest that respondent would be able to pay any amount of an award. While this court is unfamiliar with the laws of the Dominican Republic concerning distribution of debt incurred during a marital relationship, respondent's argument at the hearing that awarding fees, costs, and expenses to petitioner would simply serve to convert counsel's pro bono work into a

7

marital debt is a compelling argument. The evidence adduced at trial indicated that respondent was a stay-at-home mother of four with no income or assets, with no prospects for working outside of the home, and who intended to home school her four children. Indeed, while in this jurisdiction, it was respondent's testimony that she relied on public assistance as well as assistance from her church and sister. Although counsel for petitioner cross-examined respondent, her testimony concerning her lack of income and assets was in no manner impeached. Petitioner also testified, but presented no testimony that respondent had any hidden income or assets in the Dominican Republic or elsewhere. The court concluded from all the evidence and testimony that petitioner lost his job at Verizon, that his attempt at entrepreneurship in the cheese business led to a large tax liability, and that as a result, petitioner could no longer provide for all the needs of his wife and four children, falling back on respondent's parents to provide for certain expenses. With the respondent and children all being dual citizens of the United States and the Dominican Republic, the family came to the United States in search of a better financial life and with hopes of the parents saving their marriage, neither of which came to fruition.

Counsel for petitioner also argued that, at a minimum, his costs should be allowed under Rule 54(d)(1), Federal Rules of Civil Procedure. While this court is keenly aware of the requirements of Rule 54(d), see Cherry v. Champion Int'l Corp., 186 F.3d 442 (4th Cir. 1999), and the lack of a general exception to an award of costs based on a litigant being indigent or unable to pay, the Court of Appeals for the Fourth Circuit also made clear in Cherry that 54(d) does *not* apply where the award of costs is governed by another statute:

> The language of Rule 54(d)(1) does not provide that the presumptive award of costs may be defeated because of the nature of the underlying litigation. On the contrary, it provides that "[e]xcept when express provision therefor is made either

in a statute of the United States or in these rules," the cost-shifting to the prevailing party otherwise applies to all cases....

Id. at 448. Here, the allowance of costs to a prevailing party under Rule 54(d) is supplanted by 42 U.S.C. § 11607(b), which provides for the shifting of fees, costs, and expenses *except* where "such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). Thus, petitioner's reliance on Rule 54(d) is misplaced.

Turning to Section 11607(b)(3), the case law this court has found concerning when an award would be "clearly inappropriate" looks, as is the purpose of ICARA, to protection of children, who are not only impacted through wrongful removal or retention, but from poverty. Courts have found that shifting fees under ICARA is clearly inappropriate where the "child[ren] will be significantly adversely affected by the court's award," Whallon, 356 F.3d at 140, and where a respondent "would be unable to pay any amount of an award." East Sussex Children Servs., 919 F.Supp.2d at 734. The testimony at trial was compelling that respondent was totally dependent on income from petitioner, had no assets, and was on public assistance while in this jurisdiction. As it did at the conclusion of the trial based on careful consideration of all the evidence before it, the court reaffirms its conclusion that the litigants' four children would be significantly adversely affected by the shifting of any award as respondent has no ability to pay such award, has no assets, and has no prospects for future employment, all of which would push these children further into poverty.

**IV.  Conclusion as to Motion for Reconsideration**

Having determined that it would be clearly inappropriate to impose costs and fees based on the evidence presented at trial and that the forecast of post-trial evidence submitted in support of reconsideration is speculative, the Motion for Reconsideration will be allowed and upon reconsideration the court will deny the relief sought without prejudice as to later filing a Rule

9

60(b)(1)-(3) motion if new evidence is discovered within a year of entry of the final Order. The court will reaffirm its earlier Order for the reasons herein provided and for the additional reasons provided in respondent's brief opposing reconsideration.

### V. Petitioner's Affidavit in Support of Fees, Costs, and Expenses

Due to such determination, the court will not reach the merits of respondent's arguments concerning the alleged deficiencies with the petitioner's affidavit and documentation submitted in support of the request for fees and costs. While not reaching that issue, the court find it appropriate to note that the "lodestar" approach is the proper method for determining reasonable attorney's fees in federal court. City of Burlington v. Dague, 505 U.S. 557, 557 (1992); Clinchfield Coal Co. v. Harris, 149 F.3d 307, 309 (4th Cir.1998). Further, federal courts apply the lodestar method to ICARA cases. Distler v. Distler, 26 F.Supp.2d 723, 727 (D.N.J.1998).

To determine the reasonable rate and reasonable number of hours to use in calculating the lodestar, federal courts are guided by the twelve so-called Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputations, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).

Typically, an attorney will file detailed billing records as well as an affidavit from another practitioner indicating the time spent on the matter as well as a statement that the rate charged is customary and usual. If billing records reflect advice given to the client rather than

simply noting the service rendered and the time billed, such records can always be submitted for *in camera* review. The court then considers the documentation and these factors to determine the reasonable number of attorney hours and the reasonable rate for such services. Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir.1986).

While an award may always be reduced in conducting the lodestar analysis, Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), it would be inappropriate at such point to reduce the amount based on a respondent's limited financial resources. Friedrich v. Thompson, No. 1:99–CV–772, 1999 WL 33951234, at *3, n. 1 (M.D.N.C. Nov. 26, 1999). Put another way, respondent's financial condition is relevant as to the threshold consideration of whether an award should be allowed or shifted under § 11607(b)(3); however, once that threshold is crossed, the respondent's financial condition does not impact the lodestar analysis. Where an area of representation is novel or rare, the court will accept affidavits from other practitioners concerning comparable reasonable rates and services in other areas of federal practice.

## ORDER

**IT IS, THEREFORE, ORDERED** that petitioner's Motion for Reconsideration of Court's Denial of Fees and Costs (#26) is **ALLOWED,** and upon reconsideration, the court **REAFFIRMS** its earlier Order.

Signed: November 14, 2013

Max O. Cogburn Jr.
United States District Judge